(No. 28664.—

THE PEOPLE *ex rel.* Paul F. Jones, Director of Insurance, Appellee, *vs.* CHICAGO LLOYDS *et al.*—(CHARLES B. MORRIS, Appellant.)

*Opinion filed September 19, 1945—Rehearing denied Nov. 19, 1945.*

J. L. LONDON and FORD W. THOMPSON, both of St. Louis, Missouri, and TANNENBAUM, POLIKOFF & SCHMIDT, of Chicago, for appellant.

FERRE C. WATKINS, and GLENN, REAL & BROWNING, (RAYMOND G. REAL and O. W. BARNES, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The controversy in this case arises out of the disallowance of a claim of Charles B. Morris, appellant, by the Director of Insurance of Illinois, the liquidator of Chicago Lloyds, hereinafter referred to as "liquidator," appointed by the decree of the superior court of Cook county upon the petition of the Director of Insurance and the Attorney General of the State of Illinois.

As finally amended appellant's claim consists of a judgment rendered in the circuit court of the city of St. Louis, Missouri, against Chicago Lloyds, three years after the liquidator of Chicago Lloyds had been confirmed by the decree of the superior court. The claimant contended the full-faith-and-credit clause of the constitution of the United

States (art. IV, sec. 1,) and the acts of Congress enacted pursuant thereto, required that such judgment be recognized in the Illinois liquidation proceeding and allowed as a claim against the assets of Chicago Lloyds for the full amount of such judgment.

Appellant's claim involves a construction of the constitution of the United States, and authorizes a direct appeal to this court. *Groome* v. *Freyn Engineering Co.* 374 Ill. 113; *VanDyke* v. *Illinois Commercial Men's Ass'n,* 358 Ill. 458.

Many of the questions arising under this provision of the United States constitution have been so thoroughly settled that as to such questions an appeal to this court would not be entertained, because the question involved is no longer debatable, and we do not entertain appeals when the constitutional question is settled so as to be no longer debatable. *First Nat. Bank* v. *Village of South Pekin,* 371 Ill. 605; *Dean* v. *Board of Education,* 386 Ill. 156; *Wilson* v. *Prochnow,* 354 Ill. 98.

The question here presented, as set out in the report of the master, is as follows: "Had the liquidator of an insurance company, organized and doing business under the laws of Illinois, or the court appointing him, the right to pass upon the merits or the amount of a claim, arising out of a suit instituted in another forum before the appointment of the liquidator and consummated by a judgment of such foreign court after such appointment?" This presents a new application of the full-faith-and-credit clause, which is still debatable, or at least questionable, and therefore is subject to review by this court on direct appeal from the superior court of Cook county. (*Atkins* v. *Atkins,* 386 Ill. 345.) Incidentally the question is also in the case under such clause of the constitution as to what effect the prior decree of the Illinois court, appointing a liquidator for Chicago Lloyds, has upon a subsequent judgment rendered in another State seeking satisfaction from the same

assets. These questions, as presented, we believe have never been decided by the United States Supreme Court as the final arbiter of such questions arising under the full-faith-and-credit clause.

The facts as applicable to the questions involved are comparatively simple. Chicago Lloyds, an unincorporated association recognized and authorized by the laws of Illinois to transact insurance business in Illinois, and in other States, upon compliance with the laws of such other States, obtained a license to transact business in the State of Missouri March 1, 1932, and continued to have such authority for some years thereafter. Associated Underwriters, Inc., was the attorney in fact for Chicago Lloyds in said State, and one Roessel was attorney for Chicago Lloyds, and its agent. The claimant, Charles B. Morris, became the agent handling such business in Missouri, under a contract. A dispute arose as to whether he had accounted for all premiums paid to him, which resulted in his being arrested upon the complaint of Roessel, charged with embezzlement, indicted, tried and acquitted.

August 24, 1934, Morris brought suit in the circuit court of the city of St. Louis against Chicago Lloyds, Associated Underwriters, Inc., and attorney Roessel, for malicious prosecution and false arrest. The cause was removed to the United States court, and afterwards, January 7, 1938, remanded to the circuit court of the city of St. Louis. February 9, 1938, the People of the State of Illinois, upon the relation of the Director of Insurance, filed in the superior court of Cook county a petition praying for the entry of an order finding sufficient cause existed for the liquidation of Chicago Lloyds, and on the same day a decree was entered adjudging and decreeing that the Director of Insurance take possession of its property, and liquidate the same in accordance with the Illinois Insurance Code. February 15, 1938, an order fixing the time and procedure for the filing of claims was made, requiring

claims to be presented to the liquidator on or before November 15, 1938.

Before the liquidation proceeding Chicago Lloyds had questioned the jurisdiction of the circuit court of the city of St. Louis by a plea and demurrer which were overruled, and later filed an answer on the merits, as did also Associated Underwriters, Inc. After the order of the superior court of Cook county appointing a liquidator was entered, an injunction was issued restraining the claimant and others from prosecuting claims, (of which claimant concedes he had notice,) and counsel for Chicago Lloyds, upon the requirement of the liquidator, withdrew, and the St. Louis court was advised that the reason of such action was the liquidation proceedings in Illinois, with the consequent vesting of the title to all of the property and assets of Chicago Lloyds in the liquidator. Nevertheless, the claimant persisted in prosecuting his suit at law in the circuit court of the city of St. Louis, and April 7, 1941, such court entered a judgment in favor of the claimant against Chicago Lloyds and others in the amount of $50,000.

September 21, 1938, before obtaining judgment Morris filed his claim with the liquidator in the amount of $100,000, claiming damages for false imprisonment and malicious prosecution, and attached as an exhibit the complaint filed in the circuit court of the city of St. Louis. After he had obtained judgment he amended his claim by filing an exemplified copy of the judgment rendered by the circuit court of the city of St. Louis. The amended claim shows it arose from the same state of facts as the original. The only evidence presented by claimant was the record of this judgment obtained in the circuit court of the city of St. Louis.

In disposing of the issues presented and argued in this case it is first necessary to examine the status, rights and title of the liquidator of the insolvent insurance company under the laws of the State of Illinois. Article XIII of

"An Act to revise the law relating to insurance," referred to as the Insurance Code, (Ill. Rev. Stat. 1943, chap. 73, pars. 799 *et seq.,*) among other things provides for the liquidation of insolvent insurance companies. Section 188 of the Insurance Code, (Ill. Rev. Stat. 1943, chap. 73, par. 800,) specifies the grounds upon which the Director of Insurance and the Attorney General may petition a circuit or superior court for an order to show cause why an insurance company should not be liquidated. Section 189, (par. 801,) of the Insurance Code provides the court may issue an injunction to protect the assets of such insolvent company. Section 190, (par. 802,) provides, upon full hearing, the court may enter an order either to dismiss the proceeding, or find cause exists, and order the Director of Insurance to take possession of the property, business, assets, and affairs of said insolvent insurance company, and liquidate them according to law. Section 191 (par. 803) provides that the Director, as liquidator, is vested by law with title to the property, contracts and rights of such insolvent insurance company, as of the date of the order entered by the court. Section 193, (par. 805,) fixes the duties of the liquidator. Section 194, (par. 806,) provides that creditors, except those holding contingent claims, shall, unless otherwise ordered by the court, be fixed as of the date of the entry of the order directing liquidation. Section 208, (par. 820,) directs the manner of fixing the time to file claims, after an order has been entered declaring the company insolvent. Section 209, subsection (3,) (par. 821,) provides how and under what conditions a contingent claim may be allowed, with a limitation that the claim must become absolute against the company on or before the last day fixed for filing the proofs.

Under the provisions of a prior law, (Ill. Rev. Stat. 1935, chap. 73, par. 105(4),) which is almost identical with section 191, we have held that the title of a liquidator of an insolvent insurance company is different from that of

a receiver in chancery, who is limited to the territorial jurisdiction of the court appointing him, but, on the contrary, vests in the liquidator the title to all of the property of an insolvent insurance company. *People ex rel. Palmer v. Niehaus,* 356 Ill. 104; *National Bondholders Corporation v. Joyce,* 258 N. Y. 257, 11 N. E. 2d 552.

The pioneer case making this distinction between the title of a liquidator appointed under a special statute, and that of a receiver, is *Relf v. Rundle,* 103 U. S. 222, 26 L. ed. 337, where the distinction between possession of a receiver and the title of a State officer, vested with title of assets of an insolvent corporation, was first discussed with like results. The title of such a liquidator reaches all of the assets of the company, including those in other States; (*Relf v. Rundle,* 103 U. S. 222, 26 L. ed. 337; *Converse v. Hamilton,* 224 U. S. 243, 56 L. ed. 749;) and the title of such a liquidator must be recognized by the courts of other States. *Clark v. Williard,* 292 U. S. 112, 78 L. ed. 1160.

At least twenty States, including Missouri, have enacted statutes vesting title to the property of an insolvent corporation in the liquidator appointed to take charge of its property, and the Supreme Court of Missouri has given, to a statute similar to section 191, (Mo. Rev. Stat. 1929, sec. 5947,) the construction we have given in the *Niehaus* case. (*McDonald v. Pacific States Life Ins. Co.* 343 Mo. 1232, 124 S. W. 2d 1157.) In this case the title of a liquidator appointed in Colorado was held superior to a later judgment in Missouri, levied on Missouri real estate.

The title of such a liquidator has been compared to that of a trustee under a general deed of assignment. (*Clark v. Williard,* 292 U. S. 112, 78 L. ed. 1160.) But since insurance companies are excluded from the operation of the National Bankruptcy Act, and one of the objects of the Illinois act liquidating insolvent insurance companies is to secure ratable distribution of its assets, we see no

reason why the statute vesting a liquidator with title should not receive the same construction as the Bankruptcy Act, which on adjudication of the bankrupt places title to all of the bankrupt's property, with actual or constructive possession, in a trustee, without regard to his location or place of adjudication. *Isaacs* v. *Hobbs Tie & Timber Co.* 282 U. S. 734, 75 L. ed. 645.

In view of the foregoing, we hold that the Director of Insurance of the State of Illinois, as liquidator of Chicago Lloyds, upon the entry of the decree of the superior court of Cook county of February 9, 1938, became vested with the title to all of its property, wherever situated, and that the courts of other States are required to recognize the rights of such liquidator, established by the judgment or decree authorized by the Illinois statute for the liquidation of insolvent insurance companies.

Appellant claims that notwithstanding the property and assets of Chicago Lloyds vested in the liquidator, the full-faith-and-credit clause of the United States constitution, and the statutes enacted pursuant thereto, require the judgment rendered three years later, in the circuit court of the city of St. Louis, against Chicago Lloyds be allowed for the full amount, as a valid claim against the assets in possession of such liquidator.

If it be assumed appellant had the right to proceed to trial and judgment in the circuit court of the city of St. Louis after the liquidator had been appointed and had taken possession of all of the property of Chicago Lloyds, still, if such judgment be allowed full faith and credit by the courts of Illinois, it does not necessarily mean such judgment is entitled to be collected out of the assets of Chicago Lloyds.

The construction and interpretation of the full-faith-and-credit clause has been the subject of much controversy and difficulty, and in some cases reaching results which are apparently contradictory. No rule can be laid down which

will fit all cases. In the simple instance of a judgment for debt against a person or corporation, where collection is sought in another State, with no· complications involving insolvency, conflict of law, questions of jurisdiction, or offending State policies, little difficulty is had in applying the case of *Mills* v. *Duryee,* 7 Cranch, 481, 3 L. ed. 411, that a judgment have the same faith and credit in another State that it had in the State of its rendition. This case was decided in 1813, but since that time the United States Supreme Court has held there were exceptions to the rule first announced, because of the complex nature of the Federal union and the necessity of preserving the sovereignty and policies of the several States by refraining from imposing upon them the laws of another State under the guise of the full-faith-and-credit clause.

From the cases a general pattern may be discovered controlling the several different classes of cases in which full faith is required, and those which are regarded as exceptions to the rule. Upon examination we find that the application of the full-faith-and-credit clause is particularly favored when applied to the enforcement of judgments of another State, as distinguished from statutes and other public acts, (*Williams* v. *North Carolina,* 317 U. S. 287, 87 L. ed. 279,) doubtless because this provision is supposed to have been a part of the constitution to give effect to the general rule of *res judicata.* (*Magnolia Petroleum Corp.* v. *Hunt,* 320 U. S. 438, 88 L. ed. 149.) So when the same proposition of enforcing a judgment for money in one State is presented, and there is no question of exception to the rule arising, the rule of *Mills* v. *Duryee,* 7 Cranch, 481, 3 L. ed. 411, is easy to apply.

The first class of cases comprise those where full faith is required. In divorce matters the decree of another State is entitled to full faith and credit, where the jurisdiction of the trial court is not questioned. (*Williams* v. *North Carolina,* 317 U. S. 287, 87 L. ed. 279.) This is but an

application of the well-settled rule that when full faith and credit is sought the jurisdiction of the court rendering the judgment is always open to inquiry. (*Pendleton* v. *Russell,* 144 U. S. 640, 36 L. ed. 574.) So also, a judgment for money rendered in one State is enforcible in another although in the latter it would be regarded as a gambling debt and unenforcible. (*Fauntleroy* v. *Lum,* 210 U. S. 230, 52 L. ed. 1039.) In *Milwaukee Co.* v. *M. E. White Co.* 296 U. S. 268, 80 L. ed. 220, a judgment for taxes rendered in Wisconsin was enforced against the defendant in the State of Illinois. And in *Yarborough* v. *Yarborough,* 290 U. S. 202, 78 L. ed. 269, it is held that support money awarded a child by a decree of court in a divorce proceeding between the father and mother is not subject to being enlarged or increased in another State, where the decree is pleaded in bar, even though the child was not a party to the proceeding. And, similarly, the full-faith-and-credit clause applies to an unalterable decree of alimony of a divorced wife. (*Sistare* v. *Sistare,* 218 U. S. 1, 54 L. ed. 905.) It is to be observed in all of the cases just cited there was a judgment or decree for money against the defendant, which was held binding in another State, whether urged for collection or defensive purposes.

A second class of cases, where full faith and credit have been denied, covers a wide field. It is a general rule that the courts of no country execute the penal laws of another; (*The Antelope,* 23 U. S. 10,) and, hence, full faith and credit has been denied a judgment for a penalty obtained by a State against an insurance company, (*State of Wisconsin* v. *Pelican Ins. Co.* 127 U. S. 265, 32 L. ed. 239,) followed in *Huntington* v. *Attrill,* 146 U. S. 657, 36 L. ed. 1123, where the nature of the penalty is exhaustively treated. So, where the only remedy to collect an assessment against the stockholder of a corporation is at the suit of a *creditor,* denying full faith and credit to a judgment obtained by a receiver against a stockholder

does not offend the constitution. *Finney* v. *Guy,* 189 U. S. 335, 47 L. ed. 839.

Also, where the New York Code provided a foreign corporation could not maintain a suit unless the cause of action arose in the State, full faith and credit was not denied where the New York court refused to recognize an Illinois judgment in favor of a foreign corporation, where the action did not arise in the State of New York. (*Anglo-American Provision Co.* v. *Davis Production Co.* 191 U. S. 373, 48 L. ed. 225.) The reason given is that the requirement that the action arise in New York goes to the jurisdiction of the New York court, and such jurisdiction is not afforded by the full-faith-and-credit clause. Likewise, a judgment against an insurance company on a policy, enforcible because the beneficiary has an insurable interest in the State where the contract is made, may not be enforcible in another State where the same interest of the beneficiary is held not to be an insurable one. *Griffin* v. *McCoach, Trustee,* 313 U. S. 498, 85 L. ed. 1481.

The nature of a case as constituting a cause of action in the several States is not changed by the fact that it is reduced to judgment. (*Huntington* v. *Attrill,* 146 U. S. 657, 36 L. ed. 1123.) However, it must be observed that a State may not, under the guise of denying a remedy, refuse, under the full-faith-and-credit clause, claims otherwise capable of being enforced in such other State. *Broderick* v. *Rosner,* 294 U. S. 629, 79 L. ed. 1100.

This second type of cases represents cases which, if originally brought in the State in which enforcement of the judgment is sought, could not have been maintained, and are therefore not made valid by a judgment elsewhere. Two of these cases, the *Finney* and *Anglo-American cases,* are to be distinguished from the first class above discussed only because jurisdiction is lacking to afford a remedy, and not because of a mere difference between the States as to what amounts to a cause of action.

. A third class of cases arises when the judgment or decree sought to be enforced will, if enforced, require the application of a different law to property, or the right to take property, from that of the State in which it is sought to be enforced. So, the construction of a will involving real estate, (*Clarke* v. *Clarke,* 178 U. S. 186, 44 L. ed. 1028;) a judgment determining legitimacy of children, (*Olmsted* v. *Olmsted,* 216 U. S. 386, 54 L. ed. 530;) or the manner of adoption of children, (*Hood* v. *McGehee,* 237 U. S. 611, 59 L. ed. 1144;) or the capacity of a lunatic, (*Gasquet* v. *Fenner,* 247 U. S. 16, 62 L. ed. 956;) and the interpretation of contracts, (*Pink* v. *A.A.A. Highway Express, Inc.* 314 U. S. 201, 86 L. ed. 152,) are all instances in which the judgment of one State is unenforcible in another State under the full-faith-and-credit clause, if opposed to the law of the latter.

In recent years there has been a trend towards yet another class of cases involving full faith. Where a party has an option to proceed under the laws of one of two or more States having similar laws, as in compensation cases, where the liability may be enforced either where the contract of employment is made, or where the injury occurs; and cases involving the liquidation of corporations, where they acquire title to the property by the judgment and laws of one State but have property in another which is subject to preferences which may be created by the State law of the latter. In *Pacific Employers Ins. Co.* v. *Industrial Accident Com. of Calif.* 306 U. S. 493, 83 L. ed. 940, it is said: "It has often been recognized by this Court that there are some limitations upon the extent to which a state may be required by the full faith and credit clause to enforce even the judgment of another state in contravention of its own statutes or policy. * * * The very nature of the federal union of states, to which are reserved some of the attributes of sovereignty, precludes resort to the full faith and credit clause as the means for

compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." Having this in mind the court held, in compensation cases, where each State had a compensation law, it would be lawful for a State to adopt or enforce the remedy of another, or follow its own. There an employee residing in Massachusetts, becoming employed in that State by a Massachusetts employer, and injured in the course of his employment in the State of California, was sustained in having compensation awarded under the California law.

In *Alaska Packers Ass'n* v. *Industrial Accident Com. of California,* 294 U. S. 532, 79 L. ed. 1044, an employee made his contract in the State of California, and by agreement with his employer to be transferred there and back, went to Alaska, where he was injured. Upon return to California be brought proceedings for compensation under the California law, which was allowed and sustained notwithstanding claim that the Alaska compensation law should control. In *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 88 L. ed. 149, the plaintiff was a resident of Louisiana, and was employed in that State. In the course of his employment he went to the State of Texas, and was injured, and claimed and was allowed compensation under the Texas law. He then went back to Louisiana, the State where the contract was made, and filed another claim for compensation under the Louisiana law. The defendant pleaded *res judicata* under the Texas law, and the award in plaintiff's favor was reversed by the United States Supreme Court.

These three cases illustrate the proposition that a State may adopt and enforce the compensation laws of another, or may enforce its own laws in spite of the contract of employment being made in another State, but when it does take jurisdiction, and makes an award, there cannot be another award in another State, notwithstanding the latter

has a separate statute upon the subject, which would be available to the claimant had he not otherwise proceeded under the laws of another State. The result is analogous to that resulting from taking possession of the *res,—viz.,* the court first obtaining possession may not be disturbed by actions of other courts having concurrent jurisdiction.

In the matter of liquidation of corporations it has been frequently held that a receiver has no power beyond the jurisdiction of the court appointing him, and consequently his possession of title does not bind the courts of another State. In the case, however, of laws which vest title of an insolvent corporation in a liquidating officer, it has been determined that such law is a part of the corporation's charter and follows it to wherever it is authorized to transact business, and therefore, if by the law of its origin a liquidator acquires title, then such title must be recognized in all other States. (*Relf* v. *Rundle,* 103 U. S. 222, 26 L. ed. 337; *Clark* v. *Williard,* 292 U. S. 112, 78 L. ed. 1160.) In such case it is also competent for a State to adopt the policy of giving preference to resident creditors, where there is property of the insolvent corporation within the State. (*Clark* v. *Williard,* 294 U. S. 211, 79 L. ed. 865.) But, if there are no such creditors then a judgment rendered in another State than that of the residence of the liquidator is entitled to the same force and effect as in the State where it was rendered. It is open to the same attack, and subject to the same defenses. (*Robertson* v. *Pickrell,* 109 U. S. 608, 27 L. ed. 1049.) The tendency of most of the States is to give priority to the title of the liquidator unless a contrary policy is expressed. (*Clark* v. *Williard,* 292 U. S. 112, 78 L. ed. 1160.) Missouri has not expressed such a policy, but, as pointed out later, follows the majority rule.

No case has been called to our attention which gives to the judgments of one State the force and effect that it has therein as against a prior judgment in another State,

under which possession of property has been taken by the officer of the latter court. In such instances the rule seems to be uniform that the court which first acquires jurisdiction over the *res* is entitled to retain it and dispose of it in accordance with the law and processes of its jurisdiction. *Harkin* v. *Brundage,* 276 U. S. 36, 72 L. ed. 457; *Penn General Casualty Co.* v. *Pennsylvania,* 294 U. S. 189, 79 L. ed. 850.

From these applications of full faith and credit we are required to ascertain the principle controlling this case. Illinois has a liquidation law which requires title to the assets of an insolvent insurance company to vest in a liquidator. (Ill. Rev. Stat. 1943, chap. 73, par. 803.) Such a statute is valid. (*People* v. *Niehaus,* 356 Ill. 104.) Missouri has a similar statute, which has been construed substantially the same as that of Illinois. (*McDonald* v. *Pacific States Life Ins. Co.* 343 Mo. 1232, 124 S. W. 2d 1157.) The statute in each instance is merely authority to so place and vest the title, if the occasion requires it, as it (Ill. Rev. Stat. 1943, chap. 73, par. 800) requires a decree and finding of the circuit or superior court of insolvency, in which event the law places a title in the liquidator.

So, in this case, the title of appellee to the property and assets of Chicago Lloyds is based upon a judgment. While Missouri would have the power to give priority to Missouri creditors in the property of Chicago Lloyds located in that State, (*Clark* v. *Williard,* 292 U. S. 112, 78 L. ed. 1160,) it has not done so; nor is there any proof there ever were any assets in Missouri at the time appellant obtained a judgment. The Illinois decree appointing a liquidator vested title and possession in him. This was known to appellant, because he filed a claim with the liquidator, in accordance with the Illinois statute. The superior court of Illinois, by a decree finding insolvency, thus had obtained jurisdiction of the *res* by the law vesting title in

the liquidator, and such liquidator is entitled to keep and retain such possession to the exclusion of the process of any other court. (*Harkin* v. *Brundage, 276* U. S. 36, 72 L. ed. 457.) There being no Missouri law to the contrary this would likewise apply to the assets in Missouri. (*Clark* v. *Williard, 292* U. S. 112, 78 L. ed. 1160.) Under the law both of Missouri and Illinois it is plain no possession could be had by virtue of a Missouri judgment entered long after a decree finding facts which would vest title in a liquidator. Full faith and credit requires the Missouri creditor claiming rights under a judgment to likewise recognize the binding effect of the Illinois judgment when he seeks satisfaction from assets in control of Illinois courts.

Considered in the light of a claim what rights does a judgment obtained by appellant carry? We have held under a similar law that a judgment against a corporation, after title to its assets had passed to a liquidator, gave plaintiff no rights. (*Evans* v. *Illinois Surety Co.* 319 Ill. 105.) The Missouri court has reached substantially the same result. (*McDonald* v. *Pacific States Life Ins. Co.* 343 Mo. 1232, 124 S. W. 2d 1157.) The judgment of another State under the Federal statute enacted by authority of the full-faith-and-credit provision (28 U.S.C.A., sec. 687) is entitled to the *same* credit that it would have in the State of its rendition. In Missouri, not only the statute, but the construction of the statute, is similar to the law of Illinois, and had a liquidator been decreed in the State of Missouri, appellant either could not have had his judgment or, if he obtained it after the decree of insolvency, could not have enforced it against the property in the hands of the liquidator. He can have no greater rights in Illinois, under his judgment, than he could have in Missouri. (*Adams* v. *Saenger, 303* U. S. 59, 82 L. ed. 649.) Therefore, to disallow appellant's claim would afford the same effect to his judgment in Illinois that, under the same circumstances, it would have had in Missouri.

Under this view, the judgment of the superior court was correct.

The title of appellee is acquired under the statutes of Illinois and a decree of one of its courts of general jurisdiction. No authority has been called to our attention which gives a judgment acquired against the insolvent debtor, after its assets have been taken possession of and vested in a liquidator, priority over a judgment or decree which requires the distribution of the assets among those filing claims in pursuance of the law. Under such circumstances it seems logical to hold appellant was bound under the full-faith-and-credit clause to recognize the effect of this Illinois decree, as the courts of Illinois would be required to do had the judgment in Missouri been first made a lien, and since the liquidator appointed by the Illinois court acquired possession first, any rights against such property under the Missouri judgment would be inferior to, and subject to the Illinois judgment and decree.

Aside from the case of a surplus in the hands of the liquidator, we do not see how the cases cited by appellant have any application. All of those cases cited involving receivers are limited in their effect by the fact that a receiver has no authority whatever beyond the jurisdiction of the court which appointed it, and hence have no application to a situation in which the liquidator has acquired title to property which the courts of other States are bound to recognize.

This case comes within the class where the holder of a foreign judgment, who is given no special rights against an insolvent corporation, may not, because of the judgment alone, impose a different method of distribution of its assets than the court administering the insolvent estate. Certainly no decision has been cited by appellant which would give him rights he would not have under like circumstances in the State of Missouri. We find no authority for the proposition that the full-faith-and-credit

clause of the constitution of the United States or the enabling acts thereunder are authority for placing the creditor who has obtained the judgment in a better position in another State than he would be in his own.

Appellant also claims the court improperly allowed the master the sum of five hundred dollars, without proof of the number of days he had devoted to examination of the pleadings. An allowance for testimony taken was granted at the rate fixed by statute. Under the heading of "Fees to be fixed by the court" the master claimed $500 for reading pleadings, testimony, examining briefs and authorities, hearing arguments, preparing findings of fact and law, drawing report, and passing upon objections filed thereto. He did not specify the amount of time he had spent in such work. When objections were made to this item of the master's fees the court heard the testimony of the master in open court, and made a finding that $500 was a reasonable fee for the services performed. No certificate of the evidence given by the master has been preserved.

While it is necessary that the amount of time the master devotes to service of this character be shown, (*Litwin* v. *Litwin,* 375 Ill. 90,) it must be presumed the amount of time spent by the master was disclosed to the court, when the decree recites he heard the master's testimony on objections and makes a finding of the reasonable value of the services rendered. In the *Litwin case* the lump-sum claim of the master was disallowed because he had an opportunity to explain same to the court and did not do so. In the instant case the master did make a satisfactory explanation to the court. If appellant thought the proof was insufficient he should have preserved the evidence, to enable us to pass upon it.

Both parties have argued other questions, which we have considered but do not deem it necessary to decide because the foregoing fully disposes of the merits of the case.

510

We are of the opinion that the order of the superior court of Cook county in disallowing the claim of appellant, and fixing the fees of the master, should be, and is in both respects affirmed.

*Order affirmed.*