*In re* CONSERVATION OF ALPINE INSURANCE COMPANY (The People *ex rel.* Nathaniel S. Shapo, Director of Insurance, Plaintiff-Appellee, v. Alpine Insurance Company, Defendant-Appellant).

First District (4th Division)   No. 1—00—2248

Opinion filed December 21, 2000.

Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Scott L. Howie, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Cathleen M. Travis, D. Daniel Barr, and Daniel A. Guberman, Assistant Attorneys General, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The People of the State of Illinois *ex rel.* Nathaniel S. Shapo, Director of Insurance of the State of Illinois (Director), brought this action against the defendant, Alpine Insurance Company (Alpine), seeking to conserve and liquidate Alpine's assets. Alpine sought to compel the Director to implement a proposed rehabilitation plan instead. The trial court entered summary judgment in favor of the Director, finding Alpine's proposed rehabilitation plan illegal, and subsequently entered an order of liquidation, which it declined to stay. Alpine filed this interlocutory appeal pursuant to Rule 307(a)(5) (166 Ill. 2d R. 307(a)(5)), seeking reversal of those orders. For the reasons that follow, we affirm.

Alpine, a stock, property, and casualty insurance company organized under the laws of this state, suffers from certain financial difficulties. Based on an actuarial study commissioned by the Director, the firm of Deloitte & Touche concluded that Alpine is insolvent by more than $43 million. In January 1999, the then Acting Director of Insurance, Arnold Dutcher, filed a verified complaint for conservation and injunctive relief pursuant to Article XIII of the Illinois Insurance Code (the Code) (215 ILCS 5/187 *et seq.* (West 1998)), alleging, *inter alia*, that Alpine's financial condition rendered further transaction of business by the company hazardous to its policyholders, its creditors, and the public. On January 8, 1999, the trial court entered an agreed order of conservation, thereby authorizing the Director to take possession and control of Alpine's property, business, books, records, accounts, assets, and affairs. As conservator, the Director conducted an investigation to determine Alpine's financial condition.

During this time, Alpine's representatives engaged in discussions with the Director's staff regarding a possible plan for rehabilitation of the company. Specifically, Alpine divided its policyholders into two classes: (1) those having insurance through Alpine only (Alpine-only insureds); and (2) those having additional insurance through other carriers (Alpine multiple-policy insureds). According to the plan, Alpine would first pay the claims of Alpine-only insureds, which it estimated to constitute about one-fourth of its policyholders. Alpine averred that it had the resources to satisfy such claims and could

complete payment by the year 2003. As to the other class, Alpine-multiple policy insureds, the proposed plan required that they exhaust their other insurance coverage before seeking to recover on Alpine's policies. Once all loss and loss adjustment expenses were paid as to Alpine-only insureds, other carriers would then be able to seek contribution from Alpine with respect to the claims of Alpine's multiple-policy insureds. Alpine argued that its proposed plan was the only way to ensure that the claims of its policyholders would be paid in full, whereas liquidation would result in its policyholders receiving only approximately 20 cents on the dollar.

The Director ultimately rejected Alpine's proposed rehabilitation plan as impermissibly discriminatory and preferential, choosing to pursue liquidation instead. In August 1999, the Director filed a verified complaint for liquidation with a finding of insolvency pursuant to section 188 of the Code (215 ILCS 5/188 (West 1998)). In September 1999, Alpine conceded that it had financial deficits and the trial court entered an order finding Alpine insolvent. However, previously, Alpine had filed a motion to compel the Director to rehabilitate, rather than liquidate, the company. In response, the Director filed a motion to strike the motion to compel, characterizing it as the "functional equivalent of a request for a writ of mandamus or a mandatory injunction." The Director argued, *inter alia*, that the Code granted him the discretion to choose liquidation over rehabilitation and that Alpine's proposed plan sought relief not provided for in the Code. After oral argument, the trial court took the motions under advisement and scheduled the case for an evidentiary hearing on the merits of the rehabilitation plan in order to determine whether the Director had abused his discretion in choosing liquidation over rehabilitation. The parties sent notice of the plan to all Alpine insureds some of whom filed objections to the plan with the trial court.

Prior to the evidentiary hearing, the Director filed a motion for summary judgment on the issue of the legality of Alpine's proposed rehabilitation plan. The Director argued that the plan discriminated among policyholders in that it gave a preference to Alpine-only insureds over Alpine multiple-policy insureds in violation of the ratable distribution scheme set forth in section 205 of the Code (215 ILCS 5/205 (West 1998)). The Director, therefore, asserted that the plan was illegal and could not be implemented. Conversely, Alpine argued that: (1) neither section 205 nor any other section of the Code prohibited the Director from implementing the plan; (2) the plan was not discriminatory in that it required all policyholders to seek other coverage before seeking to recover on Alpine's policies; and (3) assuming that the plan is discriminatory, the law permits discrimination among

members of a single priority where there is a reasonable basis to do so.

After oral argument, the trial court took the Director's motion under advisement. On June 21, 2000, the trial court entered summary judgment in favor of the Director, finding that "Alpine's proposed plan does impermissibly discriminate against policyholders with other insurance." It further held that the Code is comprehensive and "clearly provides that all insureds have the equal right to participate in the distribution of assets, regardless of whether they only have insurance with Alpine or whether they are covered with additional insurance." Having ruled in favor of the Director on the issue of the rehabilitation plan's legality and having previously found Alpine to be insolvent, the trial court entered an order of liquidation, which it declined to stay. Alpine filed this appeal, asserting that the trial court erred in entering summary judgment in favor of the Director because: (1) its proposed rehabilitation plan does not impermissibly discriminate among its policyholders; (2) the trial court ignored the systematic preference for rehabilitation over liquidation; and (3) the Director's reasons for rejecting the proposed plan were invalid.

■ Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits, when taken together and in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Majca v. Beekil*, 183 Ill. 2d 407, 416, 701 N.E.2d 1084 (1998). Our review of a trial court's order granting summary judgment is *de novo*. *In re Estate of Rennick*, 181 Ill. 2d 395, 401, 692 N.E.2d 1150 (1998).

■ The crux of this case is whether Alpine's proposed rehabilitation plan violates the distribution scheme set forth in Article XIII of the Code (215 ILCS 5/187 *et seq.* (West 1998)), the object of which is to secure a ratable distribution of an insolvent insurance company's assets. *People ex rel. Jones v. Chicago Lloyds*, 391 Ill. 492, 498, 63 N.E.2d 479 (1945), *rev'd on other grounds*, *Morris v. Jones*, 329 U.S. 545, 91 L. Ed. 488, 67 S. Ct. 451 (1947). Article XIII was designed to provide a comprehensive, orderly and efficient procedure for liquidating or rehabilitating insurance companies while protecting the rights of interested parties. *In re Liquidation of Security Casualty Co.*, 127 Ill. 2d 434, 447, 537 N.E.2d 775 (1989). In order to avoid preferential treatment of creditors, the Code protects individual policyholders and other claimants without permitting certain classes of creditors to place themselves in a superior position. *In re Liquidation of Coronet Insurance Co.*, 298 Ill. App. 3d 411, 418, 698 N.E.2d 598 (1998); *Lincoln Towers Insurance Agency, Inc. v. Boozell*, 291 Ill. App. 3d 965, 969-70, 684 N.E.2d 900 (1997).

■ Section 205 of the Code governs the priority of distribution of an insolvent insurance company's assets. 215 ILCS 5/205(1) (West 1998). It applies in the context of either rehabilitation or liquidation (see 215 ILCS 5/192, 205, 210 (West 1998); see also *In re Liquidation of Reserve Insurance Co.*, 122 Ill. 2d 555, 566, 524 N.E.2d 538 (1988)), and establishes the following priority of distribution:

"(a) The costs and expenses of administration ***.

(b) Secured claims *** that are secured by liens perfected prior to the filing of the complaint.

(c) Claims for wages actually owing to employees for services rendered within 3 months prior to the date of the filing of the complaint ***.

(d) Claims by policyholders, beneficiaries, insureds and liability claims against insureds covered under insurance policies and insurance contracts issued by the company ***.

(e) Claims by policyholders, beneficiaries, and insureds, the allowed values of which were determined by estimation under paragraph (b) of subsection (4) of Section 209.

(f) Any other claims due the federal government.

(g) All other claims of general creditors ***.

(h) Claims of guaranty fund certificate holders, guaranty capital shareholders, capital note holders, and surplus note holders.

(i) Proprietary claims of shareholders, members, or other owners." 215 ILCS 5/205(1)(a) through (1)(i) (West 1998).

The claims of Alpine's policyholders fall under section 205(1)(d).

■ In support of its contention that its proposed rehabilitation plan is legal, Alpine argues, in relevant part, that: (1) the proposed plan treats all policyholders equally; (2) the Code does not prohibit classifications within a priority level; and (3) assuming the plan is discriminatory, such discrimination is allowed where it is necessary to serve policyholders' interests and is not unreasonable or arbitrary. We address these contentions in turn.

Alpine first argues that its proposed plan of rehabilitation does not impermissibly discriminate among its policyholders, but rather treats them the same, because it requires all policyholders to look to any other insurance coverage that they have prior to seeking coverage from Alpine. Alpine avers that its plan is thus wholly uniform, an argument we find to be disingenuous at best. As the Director correctly argues, "exhausting non-existent insurance coverage as a precondition to eligibility to participate in a distribution of Alpine assets does not result in equality of treatment of policyholders." We, therefore, reject Alpine's contention.

Alpine next argues that the Code does not prohibit classifications within a priority level. It thus contends that it is permissible to divide

the class of policyholders into two groups, Alpine-only insureds and Alpine multiple-policy insureds. It further argues that its plan does not tamper with the distribution scheme set forth in section 205 of the Code because it has no effect on the prioritization as between classes but, rather, within a particular class only. Conversely, the Director argues that the Code requires ratable distribution of Alpine's assets to the entire class of policyholders, both Alpine-only insureds and Alpine multiple-policy insureds. We agree with the Director.

The Illinois Supreme Court has held that "[s]ection 205(1) establishes a rule of *absolute* priority." (Emphasis added.) *In re Liquidation of Security Casualty Co.*, 127 Ill. 2d at 444. Further, "[b]ecause the legislature has provided a comprehensive statutory scheme governing the distribution of assets from a liquidated insurer's estate, equitable relief different from that provided by statute [is] not available." *In re Liquidation of Security Casualty Co.*, 127 Ill. 2d at 447; see also *In re Liquidation of Coronet Insurance Co.*, 298 Ill. App. 3d at 417. The legislature has determined that the only time the Director may, with the trial court's approval, take into consideration the special circumstances of a particular claimant and provide preferential treatment is during the period of appeal from an order directing liquidation which has not been stayed. See 215 ILCS 5/190.1 (West 1998).

Alpine's proposed rehabilitation plan creates a new class of claimants altogether, namely, Alpine multiple-policy insureds, and subordinates those claims to those of Alpine-only insureds in direct contravention of the Illinois Supreme Court's holding that "[s]ection 205(1) establishes a rule of absolute priority" (*In re Liquidation of Security Casualty Co.*, 127 Ill. 2d at 444). Section 205(1)(d) simply does not provide for the subordination of the claims of multiple-policy claimants to those of single-policy claimants. In other words, the Code does not provide for the punishment of multiple-policy insureds based on the fortuitous circumstance of their seeking out additional coverage. We thus find Alpine's argument to be without merit.

Lastly, Alpine argues that, when necessary to serve the interests of policyholders and as long as not unreasonable or arbitrary, discrimination among claimants is permissible. In support of this contention, Alpine relies heavily on *Carpenter v. Pacific Mutual Life Insurance Co.*, 10 Cal. 2d 307, 74 P.2d 761 (1937), *aff'd, Neblett v. Carpenter*, 305 U.S. 297, 83 L. Ed. 182, 59 S. Ct. 170 (1938). We find *Carpenter* to be distinguishable from the instant action and, therefore, decline to adopt its reasoning.

*Carpenter* involved an insurance carrier, Pacific Mutual, which engaged in the business of life, health, and accident insurance. Pacific

Mutual became insolvent by virtue of the fact that it had issued a large number of noncancellable accident and health policies for which it charged insufficient premiums, causing an inability to maintain lawful reserves backing the policies. The insurance commissioner of the State of California began conservation proceedings against Pacific Mutual and eventually instituted a plan of reorganization, whereby all life policies would be reinsured by a newly formed company under the same terms as issued, whereas all noncancellable policies would be reinsured at existing premium rates, but disability payments on the policies would be assumed on a reduced basis. Any policyholder could opt out of the plan by filing a claim with the commissioner in order to receive the liquidated value of his policy.

Alpine relies on *Carpenter* because the court maintained that liquidation is a last resort and that the business should be preserved if possible. *Carpenter*, 10 Cal. 2d at 329, 74 P.2d at 775. However, we note that California insurance law requires that its commissioner first attempt to rehabilitate the business of the company by entering into reinsuring or rehabilitation agreements. *Carpenter*, 10 Cal. 2d at 331, 74 P.2d at 775. Only if the commissioner fails to accomplish reinsurance or rehabilitation and further efforts would prove to be futile may he pursue liquidation. *Carpenter*, 10 Cal. 2d at 331, 74 P.2d at 775. Such is not the case under Illinois law. Section 188 of the Code (215 ILCS 5/188 (West 1998)) sets forth the grounds for either liquidation or rehabilitation, but does not mandate which should be pursued under what circumstances. Rather, the Director decides what relief to seek based on the circumstances of a given case. Thus, *Carpenter* is inapplicable to the instant action.

Based on the foregoing, we find that the trial court did not err in entering summary judgment in favor of the Director, finding Alpine's proposed rehabilitation plan impermissibly discriminatory and therefore illegal. For this reason, we need not address the remainder of the arguments raised by the parties in their briefs. The trial court's order of summary judgment and order of liquidation are affirmed.

Affirmed.

SOUTH and BARTH, JJ., concur.